Michael Ng (State Bar No. 237915)
Michael.Ng@kobrekim.com
Daniel Zaheer (State Bar No. 237118)
Daniel.Zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Gabriela M. Ruiz (State Bar No. 227110)
Gabriela.Ruiz@kobrekim.com
KOBRE & KIM LLP
201 S Biscayne Blvd #1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

Attorneys for Plaintiff
RJ TECHNOLOGY LLC

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| RJ TECHNOLOGY LLC<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 8:22-CV-1874<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RJ Technology LLC brings this action for patent infringement against Defendant Apple Inc. ("Defendant" or "Apple"). Plaintiff alleges the following:

## BACKGROUND

1. This lawsuit is an action for patent infringement. RJ Technology LLC alleges that Apple infringes U.S. Patent No. 7,749,641 ("the '641 patent" or the "Asserted Patent"), a copy of which is attached hereto as **Exhibit A**.

2. Lithium-ion batteries (commonly referred to as "Li-ion batteries") have powered the modern, mobile economy. These batteries are ubiquitous, supplying power to all manner of consumer electronic devices, such as mobile phones, laptops, tablets, and other portable electronic devices.

3. As such, improvement of battery performance has been a key driver for successfully competing in the electronics market. That has taken on ever more significance with the universal adoption of mobile devices in the everyday lives of users everywhere.

4. Xiaoping Ren and Jie Sun are the named inventors of the '641 patent and were early innovators in Li-ion battery technology. Their efforts culminated in the invention embodied by the Asserted Patent. In 2001, they first applied for and were subsequently awarded a patent in their native China. They then applied for and were awarded the counterpart '641 patent in the United States. The '641 patent has now been assigned to RJ Technology LLC, which brings these claims.

5. Apple directly infringes the claims of the Asserted Patent, including at least claims 5 and 12, by making, using, offering for sale, selling in the United States, and importing into the United States, portable electronic computing and communication devices—including smartphones, tablets, smart watches, and headphones—that use Li-ion batteries (together, "Accused Products"). Further, Apple has indirectly infringed the claims of the Asserted Patent by inducing the direct infringement of those claims by others, including among other things by (i)

manufacturing and selling the Accused Products, (ii) encouraging others to use the Accused Products, for example, through advertising, promoting, and instructing others to use the Accused Products in a manner that has resulted in the direct infringement of the claims in the Asserted Patent by others, and (iii) doing the above while knowing that the acts it has encouraged constitute direct patent infringement. Apple's infringement has also been willful.

6. RJ Technology LLC seeks damages and other relief for Apple's wrongful conduct.

## THE PARTIES

7. RJ Technology LLC is a corporation organized and existing under the laws of Delaware, with its principal place of business in Wilmington, Delaware. Plaintiff's founders and principals—Messrs. Xiaoping Ren and Jie Sun—are the named inventors on the '641 patent. They have transferred all of their rights, title, and interest in the '641 patent to Plaintiff RJ Technology LLC.

8. Apple is a California corporation with a principal place of business located at One Apple Park Way, Cupertino, California 95014. Li-ion batteries are essential to Apple's ability to make and bring to market smartphones, tablets, watches, and headphones that can satisfy consumer standards and are a crucial part of its commercial success.

## THE ASSERTED PATENT

9. The '641 patent, titled "Secondary Lithium Ion Cell or Battery, and Protecting Circuit, Electronic Device, and Charging Device of the Same," which was duly and lawfully issued on July 6, 2010, is based on a U.S. patent application filed on May 6, 2004. The '641 patent claims priority to PCT/CN02/00696, which in turn claims priority to Chinese Patent No. ZL 01141615.7 (the "Chinese Patent").

10. The '641 patent discloses and claims an improved secondary (or rechargeable) Li-ion cell or battery, along with related methods, including use of a charge cutoff voltage above the then-conventionally accepted 4.2 volts and a

modification to the ratio between the material used in the positive and negative electrodes of the batteries. The ’641 patent discloses that a battery manufactured and operated in this manner maintains its capacity over hundreds of charge and discharge cycles.

11. Claims 5 and 12 of the ’641 patent are exemplary:

> ***Claim 5:*** A secondary lithium ion cell or battery, characterized in that the secondary lithium ion cell or battery has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V, and a ratio of positive electrode material to negative electrode material of the secondary lithium ion cell or battery is from 1:1.0 to 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.
>
> ***Claim 12:*** A secondary lithium ion cell or battery according to claim 5, wherein the secondary lithium ion cell or battery maintains at least 75.83% of capacity after 400 cycles.

The ’641 patent has now been assigned to Mr. Ren’s and Mr. Sun’s company, RJ Technology LLC.

## JURISDICTION AND VENUE

12. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 271, 281, 282(a), 283, 284, and 285. The Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. The Court has personal jurisdiction over Apple. Apple has regularly conducted and continues to conduct business in the State of California, has directly or through its distribution network purposefully placed infringing products into the stream of commerce in California, and has committed acts of infringement in this federal judicial district including by making, using, offering for sale, selling, or importing the Accused Products which infringe the Asserted Patent, and by inducing others to infringe the Asserted Patent by using the Accused Products.

14. Venue is proper in this judicial district because Apple has regular and established places of business in the Central District of California and has committed acts of infringement in this judicial district. Apple has numerous distributors and retailers in this judicial district, including 23 Apple Stores as well as offices in Los Angeles, Irvine, and Culver City. All told, Apple maintains over 100,000 square feet of office space in this judicial district. Apple has also announced plans to open two new offices totaling an additional 550,000 square feet of space and to make its regional headquarters in this judicial district. Apple currently employs over 1,000 people in the Central District of California, many of whom design, sell, manufacture, or support the Accused Products. Apple has also announced plans to hire an additional 2,000 employees here in the next few years.

15. Apple has committed acts of patent infringement in the Central District of California, including by advertising, offering to sell, selling, importing, and/or distributing infringing products, and/or inducing the sale and use of infringing products in the United States, including in the Central District of California, knowing and expecting them to be purchased and used by consumers in the United States, including in this judicial district, and such infringing products have been purchased and used in the United States and in this judicial district. For example, Apple has regularly imported the Accused Products as well as relevant components, including Li-ion batteries, through the Port of Los Angeles. Those products and components are also stored in warehouses in the greater Los Angeles area. Apple therefore has committed acts of patent infringement and has a regular and established place of business in this federal judicial district. Accordingly, venue is proper in this federal judicial district, pursuant to 28 U.S.C. § 1400(b).

## **THE ACCUSED PRODUCTS**

16. Apple makes, uses, sells, offers to sell in the United States, and/or imports into the United States the Accused Products, all without seeking a license to the ’641 patent.

**(1) The Accused Smartphone Products**

17. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various smartphones that infringe at least claims 5 and 12 of the ’641 patent, including but not limited to the iPhone 6, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone SE (2nd generation), iPhone SE (3rd generation), iPhone 7, iPhone 7+, iPhone 8, iPhone 8+, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone 12, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 12 Mini, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone 14, iPhone 14 Pro, iPhone 14 Pro Max, and iPhone 14 Plus (the “Accused Smartphone Products”).

18. The iPhone 11 Pro exemplifies the relevant functionality of each Accused Smartphone Product.



*Refurbished iPhone 11 Pro 512GB – Space Gray (Unlocked)*, APPLE, https://www.apple.com/shop/product/FWCR2LL/A/refurbished-iphone-11-pro-512gb-space-gray-unlocked?fnode=1eed809e9fd38e9d7cbcc13b442e9fb586f5fe03225abd29802e9a37b77578aab466b8befddbcfa044aa5655ba00ede99b11f6723cd73ae0d6875e5941e77678728eecc4e565c6f3f306e15bfc259d5ae1527ca6cffa725872da72a8ab373f3d (last visited Dec. 9, 2022).

19. The iPhone 11 Pro contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.



*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Dec. 9, 2022).

20. Further, the Apple iPhone 11 Pro utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the iPhone 11 Pro has an upper charge limit (充电限制电压) of 4.4 V.




*Replacement Battery 3046 mAh 3.79 V Compatible with Apple iPhone 11 Pro (A2160)*, ESOURCE PARTS, https://www.esourceparts.ca/replacement-battery-3046-

mah-3-79-v-compatible-with-apple-iphone-11-pro-a2160.html?utm_source=googleshopping&utm_medium=cse&ep_cur=CAD&keyword=&gclid=Cj0KCQjwntCVBhDdARIsAMEwACnF6mH5nuYFHW3MnnJRzTeiTirg8DTPdMFa1_09PrB-H-x8RGk_pqIaAsOAEALw_wcB (last visited Dec. 9, 2022).

21. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple iPhone 11 Pro is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

22. The iPhone 11 Pro Li-ion battery maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the iPhone 11 Pro Li-ion battery maintains 80% of its original capacity after 500 charging cycles.

> **iPhone Owners**
>
> Your battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles. The one-year warranty includes service coverage for a defective battery. If it is out of warranty, Apple offers a battery service. Prices and terms may vary.

*Batteries*, APPLE, https://www.apple.com/batteries/service-and-recycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary (last visited Dec. 9, 2022).

**(2) The Accused Tablet Products**

23. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various tablets that infringe at least claims 5 and 12 of the '641 patent, including but not limited to the iPad 5, iPad 6, iPad 7, iPad 8, iPad 9, iPad 10, iPad Air (3rd Generation), iPad Air (4th Generation), iPad Air (5th Generation), iPad Mini 4, iPad Mini 5, iPad Mini 6, 2016 iPad Pro (9.7"), 2017 iPad Pro (10.5"), iPad Pro 1 (11"), iPad Pro 1 (12.9"), iPad Pro 2 (11"), iPad Pro 2 (12.9"), iPad Pro 3 (11"), iPad Pro 3 (12.9"), iPad Pro 4, and iPad Pro 5 (the "Accused Tablet Products").

24. The iPad Air (4th Generation) exemplifies the relevant functionality of each Accused Tablet Product.



*iPad Air (4th generation) – Technical Specifications*, APPLE, https://support.apple.com/kb/SP828?locale=en_US (last visited Dec. 9, 2022).

25. The iPad Air (4th Generation) contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.




*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Dec. 9, 2022).

26. Further, the iPad Air (4th Generation) utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the iPhone 11 Pro has an upper charge limit (充电限制电压) of 4.35 V.



*iPad Air 4 Teardown*, iFixit (Mar. 3, 2021), https://www.ifixit.com/Teardown/iPad+Air+4+Teardown/141032 (image at 3:38, which has been sharpened) (last visited Dec. 9, 2022).

27. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the iPad Air (4th Generation) is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

28. The iPad Air (4th Generation) Li-ion battery maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the iPad Air (4th Generation) maintains 80% of its capacity after 1000 complete charge cycles.

> **iPad Owners**
>
> Your battery is designed to retain up to 80% of its original capacity at 1000 complete charge cycles. The one-year warranty includes service coverage for a defective battery. If it is out of warranty, Apple offers a battery service. Prices and terms may vary.

*Batteries*, APPLE, https://www.apple.com/batteries/service-and-recycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary (last visited Dec. 9, 2022).

**(3) The Accused Smart Watch Products**

29. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various smart watches that infringe at least claims 5 and 12 of the '641 patent, including but not limited to the Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch SE, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Ultra, Apple Watch SE (2nd Generation), Apple Watch Series 8, and Apple Watch Hermes (the "Accused Smart Watch Products").

30. The Apple Watch Series 7 exemplifies the relevant functionality of each Accused Smart Watch Product.




*Apple Watch Series 7*, APPLE, https://web.archive.org/web/20220710092539/https://www.apple.com/apple-watch-series-7/ (last visited Dec. 9, 2022).

31. The Apple Watch Series 7 contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.

> **Apple Lithium-ion Batteries**
>
> They're inside every iPhone, iPad, iPod, Apple Watch, MacBook, and AirPods, helping you do all kinds of things in all kinds of places. Find out more about your battery to get the most out of it throughout its lifespan — and beyond.

*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Dec. 9, 2022).

32. Further, the Apple Watch Series 7 utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the Apple Watch Series 7 has an upper charge limit of 4.45 V.




Juli Clover, *Apple Watch Series 7 Teardown Reveals Battery Capacity, Display Updates and More*, MacRumors (Oct. 21, 2021 1:42 PM PDT), https://www.macrumors.com/2021/10/21/apple-watch-series-7-teardown-ifixit/#:~:text=The%2041mm%20%E2%80%8CApple%20Watch%20Series%207%E2%80%8C%20features%20a,new%2C%20brighter%20displays%20rather%20than%20adding%20battery%20life (last visited Dec. 9, 2022).

33. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple Watch Series 7 is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

34. The Apple Watch Series 7 maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the Apple Watch Series 7 maintains 80% of its battery's capacity after 1000 complete charge cycles.

## Apple Watch Owners

Your battery is designed to retain up to 80% of its original capacity at 1000 complete charge cycles. The one-year warranty (for Apple Watch and Apple Watch Sport) and two-year warranty (for Apple Watch Edition) include service coverage for a defective battery. If it is out of warranty, Apple offers a battery service. Prices and terms may vary.

*Batteries*, APPLE, https://www.apple.com/batteries/service-and-recycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary (last visited Dec. 9, 2022).

**(4) The Accused Headphone Products**

35. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various headphones that infringe at least claim 5 of the ’641 patent, including but not limited to the Airpods, Airpods 2, Airpods 3, Airpods Pro, Airpods Pro 2, and Airpods Max (the “Accused Headphone Products”).

36. The Apple Airpods Pro exemplifies the relevant functionality of each Accused Headphone Product.



*AirPods Pro*, APPLE, https://web.archive.org/web/20220703124624/https://www.apple.com/airpods-pro/ (last visited Dec. 9, 2022).

37. The Apple Airpods Pro contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.




*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Dec. 9, 2022).

38. Further, the Apple Airpods Pro utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the Apple Airpods Pro has an upper charge limit (充电限制电压) of 4.35 V.




*AirPods Pro Teardown*, iFixit (Oct. 31, 2019), https://www.ifixit.com/Teardown/AirPods+Pro+Teardown/127551 (last visited Dec. 9, 2022).

39. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple Airpods Pro is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

**COUNT ONE: INFRINGEMENT OF U.S. PATENT 7,749,641**

40. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

41. The ’641 patent is valid and enforceable. Apple does not have a license to practice any of the limitations claimed in the ’641 patent.

42. By making, using, offering for sale, and/or selling products in the United States, and/or importing them into the United States, including but not limited to the Accused Products, Apple has injured Plaintiff and is liable to Plaintiff for directly infringing one or more claims of the Asserted Patent pursuant to 35 U.S.C. § 271(a).

43. Apple knowingly encourages and intends to induce infringement of the Asserted Patent by (i) making, using, offering for sale, and/or selling products in the United States, and/or importing them into the United States, including but not limited to the Accused Products and (ii) encouraging and instructing its customers on how to use the inventions claimed in the Asserted Patent, the claims of which are directly infringed by Apple’s customers. Apple therefore also infringes the Asserted Patent under 35 U.S.C. § 271(b).

44. For example, through various marketing and advertising materials, Apple encourages and instructs its customers on how to use the inventions claimed in the Asserted Patent, which Apple advertises as a core feature of the Accused Products, as shown by way of a non-limiting example below:

> ## Charge the iPhone battery
>
> iPhone has an internal, lithium-ion rechargeable battery, which currently provides the best performance for your device. Compared with traditional battery technology, lithium-ion batteries are lighter, charge faster, last longer, and have a higher power density for more battery life. To understand how your battery works so you can get the most out of it, see the Apple Lithium-ion Batteries website.

*iPhone User Guide*, APPLE, https://support.apple.com/guide/iphone/charge-the-battery-iph63eecc618/ios (last visited Dec. 9, 2022).




*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Dec. 9, 2022).

45. Apple performs these actions with knowledge of the Asserted Patent. Apple became aware of the Asserted Patent on or around March 21, 2018. On that date, Plaintiff's founders and named inventors on the '641 patent initiated a patent infringement lawsuit against Apple at the Beijing Intellectual Property Court to recover damages and to obtain an injunction against Apple for its infringement of the Chinese Patent.

46. On June 6, 2018, shortly after it was sued in China, Apple filed a request with the Chinese Patent from the China National Intellectual Property Administration (CNIPA),[1] seeking a declaration of invalidity of the Chinese Patent.

47. Apple's request was unsuccessful. On April 15, 2019, the CNIPA issued its decision, holding that thirteen of the fourteen claims in the Chinese Patent were valid, and only a single claim—which does not have a counterpart claim in the '641 patent—was invalid.

48. Apple appealed the decision to the Beijing IP Court, and the appeal went all the way up to the People's Republic of China Supreme People's Court, which left the CNIPA's validity findings in place and rejected Apple's petition for a review of the judgment (a procedure similar to a motion for reconsideration or for

[1] The CNIPA is the Chinese patent office, the equivalent of the United States Patent and Trademark Office.

a rehearing *en banc*). The action against Apple is currently pending in the Beijing IP Court.

49. In total, the litigation in China has been pending for nearly five years. On information and belief, Apple became aware of the Asserted Patent in conjunction with its litigation in China or otherwise remained willfully blind to the Asserted Patent.

50. In any event, RJ Technology LLC made Apple aware of the Asserted Patent on October 19, 2022, when it served the complaint in this action on Apple along with Exhibit A, a certified copy of the Asserted Patent. ECF Nos. 1, 1-1, 18.

51. As such, Apple's infringement of the Asserted Patent has been and continues to be deliberate and willful and constitutes egregious misconduct. Consequently, Apple's infringement is exceptional and warrants an award of enhanced damages and attorneys' fees pursuant to 35 U.S.C. §§ 284-285.

52. Plaintiff has been harmed by Apple's wrongful conduct and is entitled to compensatory damages, in no event less than a reasonable royalty with interest and costs.

## **DEMAND FOR JURY TRIAL**

RJ Technology LLC hereby demands a jury trial on all issues triable to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, RJ Technology LLC respectfully requests that the Court enter judgment and relief against Defendants, as follows:

a) Declaring that Apple has infringed and continues to infringe one or more claims of the '641 patent;

b) Awarding damages sufficient to compensate Plaintiff for Apple's infringement, including pre-and post-judgment interest and for an accounting of the same;

c) Finding that Apple's infringement is willful and enhancing damages pursuant to 35 U.S.C. § 284;

d) Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise permitted by law;

e) Awarding all costs of suit;

f) Awarding an ongoing royalty in an amount to be determined for continued infringement after the date of judgment; and

g) Ordering such other and further relief as the Court may deem just and proper.

Dated: December 9, 2022

KOBRE & KIM LLP

By: */s/ Michael Ng*

Michael Ng (State Bar No. 237915)
Michael.Ng@kobrekim.com
Daniel Zaheer (State Bar No. 237118)
Daniel.Zaheer@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Gabriela M. Ruiz (State Bar No. 227110)
Gabriela.Ruiz@kobrekim.com
KOBRE & KIM LLP
201 S Biscayne Blvd #1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

George Stamatopoulos (Pro Hac Vice)
George.Stamatopoulos@kobrekim.com
Julian Pymento (Pro Hac Vice)
Julian.Pymento@kobrekim.com

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Telephone: 212-488-1200
Facsimile: 212-488-1220

Zach Ruby (Pro Hac Vice)
Zach.Ruby@kobrekim.com
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
Telephone: 202-664-1900
Facsimile: 202-664-1920

Hangcheng (Robert) Zhou (State Bar No. 320038)
Robert.Zhou@kobrekim.com
Xue Li (State Bar No. 333826)
Xue.Li@kobrekim.com
KOBRE & KIM LLP
43rd Floor, 4302-4304 HKRI Centre
One, HKRI Taikoo Hui
288 Shimen Yi Road
Shanghai, PRC, 200041
Telephone: +86 21-3210-2100

Franklin D. Kang (State Bar No. 192314)
fkang@onellp.com
One, LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA 92660
Telephone: 310-951-1123
Facsimile: 310-943-2085

*Attorneys for Plaintiff*
*RJ Technology LLC*