Ellisen Shelton Turner, P.C. (SBN 224842)
*ellisen.turner@kirkland.com*
Yungmoon Chang (SBN 311673)
*yungmoon.chang@kirkland.com*
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Brandon H. Brown (SBN 266347)
*bhbrown@kirkland.com*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Vanessa Sim (SBN 341107)
*vanessa.sim@kirkland.com*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RJ TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 8:22-CV-1874-JVS-JDE<br><br>**DEFENDANT APPLE INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>FAC Filed: December 9, 2022<br>SAC Filed: April 13, 2023 |

Defendant Apple Inc. ("Apple" or "Defendant"), by and through the undersigned counsel, hereby answers Plaintiff RJ Technology LLC's ("RJ Technology" or "Plaintiff") Second Amended Complaint for Patent Infringement (Dkt. 51) ("Complaint") as follows:

## GENERAL DENIAL

Except as otherwise expressly admitted herein, Apple denies each and every allegation contained in the Complaint, including, without limitation, any allegations set forth in the preamble or headings of the Complaint, and specifically deny any liability to Plaintiff. Pursuant to Federal Rule of Civil Procedure 8(b), allegations in the Complaint to which no responsive pleading is required shall be denied. Apple expressly reserves the right to seek to amend and/or supplement its Answer as may be necessary.

## RESPONSES TO SPECIFIC ALLEGATIONS

Incorporating the foregoing, Defendants respond to the specific allegations in the Complaint as follows:

## BACKGROUND

1. This lawsuit is an action for patent infringement. RJ Technology LLC alleges that Apple infringes U.S. Patent No. 7,749,641 ("the '641 patent" or the "Asserted Patent"), a copy of which is attached hereto as **Exhibit A**.

1. Apple denies the allegations set forth in Paragraph 1 of the Complaint, except admits that the Complaint purports to state an action for patent infringement accusing Apple of infringing United States Patent No. 7,749,641 ("the '641 Patent" or "the Asserted Patent") and that Exhibit A purports to be a copy of the '641 Patent.

2. Lithium-ion batteries (commonly referred to as "Li-ion batteries") have powered the modern, mobile economy. These batteries are ubiquitous, supplying power to all manner of consumer electronic devices, such as mobile phones, laptops, tablets, and other portable electronic devices.

2. Apple states the allegations set forth in Paragraph 2 of the Complaint are subjective characterizations and conclusions of law to which no response is required. To the extent a response is required, Apple admits that lithium-ion batteries may be used to supply power to consumer electronic devices, such as mobile phones, laptops, tablets, and other portable electronic devices. Apple lacks sufficient information to respond to the balance of Paragraph 2, and on that basis, denies any remaining allegations.

3. As such, improvement of battery performance has been a key driver for successfully competing in the electronics market. That has taken on ever more significance with the universal adoption of mobile devices in the everyday lives of users everywhere.

3. Apple states the allegations set forth in Paragraph 3 of the Complaint are subjective characterizations and conclusions of law to which no response is required. To the extent a response is required, Apple lacks sufficient information to respond to the balance of Paragraph 3, and on that basis, denies any remaining allegations of Paragraph 3.

4. Xiaoping Ren and Jie Sun are the named inventors of the ’641 patent and were early innovators in Li-ion battery technology. Their efforts culminated in the invention embodied by the Asserted Patent. In 2001, they first applied for and were subsequently awarded a patent in their native China. They then applied for and were awarded the counterpart ’641 patent in the United States. The ’641 patent has now been assigned to RJ Technology LLC, which brings these claims.

4. Apple admits that the face of the ’641 Patent reflects the inventors of the ’641 Patent are Xiaoping Ren and Jie Sun, and the date of the ’641 Patent is July 6, 2010. Apple lacks sufficient information to respond to the balance of Paragraph 4, and on that basis, denies any remaining allegations.

5. Apple directly infringes the claims of the Asserted Patent, including at least claims 5 and 12, by making, using, offering for sale, selling in the United States,

and importing into the United States, portable electronic computing and communication devices—including smartphones, tablets, smart watches, and headphones—that use Li-ion batteries (together, “Accused Products”). Further, Apple has indirectly infringed the claims of the Asserted Patent by inducing the direct infringement of those claims by others, including among other things by (i) manufacturing and selling the Accused Products, (ii) encouraging others to use the Accused Products, for example, through advertising, promoting, and instructing others to use the Accused Products in a manner that has resulted in the direct infringement of the claims in the Asserted Patent by others, and (iii) doing the above while knowing that the acts it has encouraged constitute direct patent infringement. Apple’s infringement has also been willful.

5. Apple states that the allegations set forth in Paragraph 5 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 5.

6. RJ Technology LLC seeks damages and other relief for Apple’s wrongful conduct.

6. Apple denies the allegations set forth in Paragraph 6 of the Complaint, except admits that Plaintiff’s Complaint purports to seek damages and other relief for its allegations against Apple.

## **<u>THE PARTIES</u>**

7. RJ Technology LLC is a corporation organized and existing under the laws of Delaware, with its principal place of business in Wilmington, Delaware. Plaintiff’s founders and principals—Messrs. Xiaoping Ren and Jie Sun—are the named inventors on the ’641 patent. They have transferred all of their rights, title, and interest in the ’641 patent to Plaintiff RJ Technology LLC.

7. Apple denies knowledge sufficient to form a belief as to the allegations set forth in Paragraph 7 of the Complaint, except admits that RJ Technology LLC purports to be a corporation registered under the laws of Delaware with its principal

place of business in Wilmington, Delaware and that according to the face of the ’641 Patent, the inventors of the ’641 Patent are Xiaoping Ren and Jie Sun.

8. Apple is a California corporation with a principal place of business located at One Apple Park Way, Cupertino, California 95014. Li-ion batteries are essential to Apple’s ability to make and bring to market smartphones, tablets, watches, and headphones that can satisfy consumer standards and are a crucial part of its commercial success.

8. Apple denies the allegation set forth in Paragraph 8 of the Complaint, except admits that Apple is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California, 95014.

## THE ASSERTED PATENT

9. The ’641 patent, titled “Secondary Lithium Ion Cell or Battery, and Protecting Circuit, Electronic Device, and Charging Device of the Same,” which was duly and lawfully issued on July 6, 2010, is based on a U.S. patent application filed on May 6, 2004. The ’641 patent claims priority to PCT/CN02/00696, which in turn claims priority to Chinese Patent No. ZL 01141615.7 (the “Chinese Patent”).

9. Apple denies the allegations set forth in Paragraph 9 of the Complaint, except admits that according to the face of the ’641 Patent, the ’641 Patent is titled “Secondary Lithium Ion Cell or Battery, and Protecting Circuit, Electronic Device, and Charging Device of the Same,” the date of the ’641 Patent is July 6, 2010, and the ’641 Patent purports to claim priority to PCT No. PCT/CN02/00696.

10. The ’641 patent discloses and claims an improved secondary (or rechargeable) Li-ion cell or battery, along with related methods, including use of a charge cutoff voltage above the then-conventionally accepted 4.2 volts and a modification to the ratio between the material used in the positive and negative electrodes of the batteries. The ’641 patent discloses that a battery manufactured and operated in this manner maintains its capacity over hundreds of charge and discharge cycles.

10. Apple states that the allegations set forth in Paragraph 10 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 10.

11. Claims 5 and 12 of the ’641 patent are exemplary:

> ***Claim 5:*** A secondary lithium ion cell or battery, characterized in that the secondary lithium ion cell or battery has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V, and a ratio of positive electrode material to negative electrode material of the secondary lithium ion cell or battery is from 1:1.0 to 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.
>
> ***Claim 12:*** A secondary lithium ion cell or battery according to claim 5, wherein the secondary lithium ion cell or battery maintains at least 75.83% of capacity after 400 cycles.

The ’641 patent has now been assigned to Mr. Ren’s and Mr. Sun’s company, RJ Technology LLC.

11. Apple denies the allegations set forth in Paragraph 11 of the Complaint, except admits that the face of the ’641 Patent states that the inventors are Xiaoping Ren and Jie Sun and admits Claim 5 and Claim 12 of the ’641 Patent recite the language in Paragraph 11.

## JURISDICTION AND VENUE

12. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 271, 281, 282(a), 283, 284, and 285. The Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. Apple denies the allegations set forth in Paragraph 12 of the Complaint, except admits that the Complaint purports to state an action under the patent laws of the United States, and admits a court has subject matter jurisdiction over patent actions pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. The Court has personal jurisdiction over Apple. Apple has regularly conducted and continues to conduct business in the State of California, has directly or through its distribution network purposefully placed infringing products into the stream of commerce in California, and has committed acts of infringement in this federal judicial district including by making, using, offering for sale, selling, or importing the Accused Products which infringe the Asserted Patent, and by inducing others to infringe the Asserted Patent by using the Accused Products.

13. Apple does not deny that the United States District Court, Central District of California has personal jurisdiction over Apple in this litigation. To the extent the remaining allegations in Paragraph 13 are not legal conclusions to which no response is required, Apple denies the balance of the allegations.

14. Venue is proper in this judicial district because Apple has regular and established places of business in the Central District of California and has committed acts of infringement in this judicial district. Apple has numerous distributors and retailers in this judicial district, including 23 Apple Stores as well as offices in Los Angeles, Irvine, and Culver City. All told, Apple maintains over 100,000 square feet of office space in this judicial district. Apple has also announced plans to open two new offices totaling an additional 550,000 square feet of space and to make its regional headquarters in this judicial district. Apple currently employs over 1,000 people in the Central District of California, many of whom design, sell, manufacture, or support the Accused Products. Apple has also announced plans to hire an additional 2,000 employees here in the next few years.

14. Apple admits that it has offices, stores, and employees in this judicial district. To the extent the remaining allegations in Paragraph 14 are not legal conclusions and subjective characterizations to which no response is required, Apple denies the balance of the allegations.

15. Apple has committed acts of patent infringement in the Central District of California, including by advertising, offering to sell, selling, importing, and/or

distributing infringing products, and/or inducing the sale and use of infringing products in the United States, including in the Central District of California, knowing and expecting them to be purchased and used by consumers in the United States, including in this judicial district, and such infringing products have been purchased and used in the United States and in this judicial district. For example, Apple has regularly imported the Accused Products as well as relevant components, including Li-ion batteries, through the Port of Los Angeles. Those products and components are also stored in warehouses in the greater Los Angeles area. Apple therefore has committed acts of patent infringement and has a regular and established place of business in this federal judicial district. Accordingly, venue is proper in this federal judicial district, pursuant to 28 U.S.C. § 1400(b).

15. Apple states that the allegations set forth in Paragraph 15 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 15.

**<u>THE ACCUSED PRODUCTS</u>**

16. Apple makes, uses, sells, offers to sell in the United States, and/or imports into the United States the Accused Products, all without seeking a license to the '641 patent.

16. Apple denies the allegations set forth in Paragraph 16 of the Complaint, except admits that as of the date of this Answer, it has not sought from Plaintiff a license to the '641 Patent.

**(1) The Accused Smartphone Products**

17. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various smartphones that infringe at least claims 5 and 12 of the '641 patent, including but not limited to the iPhone 6, iPhone 6S, iPhone 6S Plus, iPhone SE, iPhone SE (2nd generation), iPhone SE (3rd generation), iPhone 7, iPhone 7+, iPhone 8, iPhone 8+, iPhone X, iPhone XS, iPhone XS Max, iPhone XR, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone 12, iPhone 12 Pro, iPhone 12

Pro Max, iPhone 12 Mini, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone 14, iPhone 14 Pro, iPhone 14 Pro Max, and iPhone 14 Plus (the "Accused Smartphone Products").

17. Apple states that the allegations set forth in Paragraph 17 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies that any of the smartphones listed in Paragraph 17 infringe any valid claim of the '641 Patent and denies the allegations set forth in Paragraph 17 on this basis.

18. The iPhone 11 Pro exemplifies the relevant functionality of each Accused Smartphone Product.



*Refurbished iPhone 11 Pro 4 – Space Gray (Unlocked)*, APPLE, https://www.apple.com/shop/product/FWCR2LL/A/refurbished-iphone-11-pro-512gb-space-grayunlocked?fnode=1eed809e9fd38e9d7cbcc13b442e9fb586f5fe03225abd29802e9a37b77578aab466b8befddbcfa044aa5655ba00ede99b11f6723cd73ae0d6875e5941e77678728eecc4e565c6f3f306e15bfc259d5ae1527ca6cffa725872da72a8ab373f3d (last visited Apr. 10, 2023).

18. Apple states that the allegations set forth in Paragraph 18 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 18.

19. The iPhone 11 Pro contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.




*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Apr. 10, 2023).

19. Apple states that the allegations set forth in Paragraph 19 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple admits certain of its iPhone products contain lithium-ion batteries, and denies the balance of the allegations set forth in Paragraph 19.

20. Further, the Apple iPhone 11 Pro utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the iPhone 11 Pro has an upper charge limit (充电限制电压) of 4.4 V.




*Replacement Battery 3046 mAh 3.79 V Compatible with Apple iPhone 11 Pro (A2160)*, ESOURCE PARTS, https://www.esourceparts.ca/replacement-battery-3046-mah-3-79-v-compatible-with-apple-iphone-11-proa2160.html?utm_source=googleshopping&utm_medium=cse&ep_cur=CAD&keyword=&gclid=Cj0KCQjwntCVBhDdARIsAMEwACnF6mH5nuYFHW3MnnJRzTei

Tirg8DTPdMFa1_09PrB-H-x8RGk_pqIaAsOAEALw_wcB (last visited Apr. 10, 2023).

20. Apple states that the allegations set forth in Paragraph 20 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 20.

21. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple iPhone 11 Pro is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

21. Apple states that the allegations set forth in Paragraph 21 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 21.

22. The iPhone 11 Pro Li-ion battery maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the iPhone 11 Pro Li-ion battery maintains 80% of its original capacity after 500 charging cycles.




*Batteries*, APPLE, https://www.apple.com/batteries/service-and-recycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary (last visited Apr. 10, 2023).

22. Apple states that the allegations set forth in Paragraph 22 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 22.

**(2) The Accused Tablet Products**

23. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various tablets that infringe at least claims 5 and 12 of the '641 patent, including but not limited to the iPad 5, iPad 6, iPad 7, iPad 8, iPad 9, iPad 10, iPad Air (3rd Generation), iPad Air (4th Generation), iPad Air (5th Generation), iPad Mini 4, iPad Mini 5, iPad Mini 6, 2016 iPad Pro (9.7"), 2017 iPad Pro (10.5"), iPad Pro 1 (11"), iPad Pro 1 (12.9"), iPad Pro 2 (11"), iPad Pro 2 (12.9"), iPad Pro 3 (11"), iPad Pro 3 (12.9"), iPad Pro 4, and iPad Pro 5 (the "Accused Tablet Products").

23. Apple states that the allegations set forth in Paragraph 23 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies that any of the iPad products listed in Paragraph 23 infringe any valid claim of the '641 Patent and denies the allegations set forth in Paragraph 23 on that basis.

24. The iPad Air (4th Generation) exemplifies the relevant functionality of each Accused Tablet Product.



*iPad Air (4th generation) – Technical Specifications*, APPLE, https://support.apple.com/kb/SP828?locale=en_US (last visited Apr. 10, 2023).

24. Apple states that the allegations set forth in Paragraph 24 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 24.




25. The iPad Air (4th Generation) contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.

*Batteries*, APPLE, [https://www.apple.com/batteries/](https://www.apple.com/batteries/) (last visited Apr. 10, 2023).

25. Apple states that the allegations set forth in Paragraph 25 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 25.

26. Further, the iPad Air (4th Generation) utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the iPhone 11 Pro has an upper charge limit (充电限制电压) of 4.35 V.



*iPad Air 4 Teardown*, iFixit (Mar. 3, 2021), https://www.ifixit.com/Teardown/iPad+Air+4+Teardown/141032 (image at 3:38, which has been sharpened) (last visited Apr. 10, 2023).

26. Apple states that the allegations set forth in Paragraph 26 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 26.

27. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the iPad Air (4th Generation) is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

27. Apple states that the allegations set forth in Paragraph 27 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 27.

28. The iPad Air (4th Generation) Li-ion battery maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the iPad Air (4th Generation) maintains 80% of its capacity after 1000 complete charge cycles.

# iPad Owners

Your battery is designed to retain up to 80% of its original capacity at 1000 complete charge cycles. The one-year warranty includes service coverage for a defective battery. If it is out of warranty, Apple offers a battery service. Prices and terms may vary.

*Batteries*, APPLE, https://www.apple.com/batteries/service-andrecycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary (last visited Apr. 10, 2023).

28. Apple states that the allegations set forth in Paragraph 28 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 28.

**(3) The Accused Smart Watch Products**

29. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various smart watches that infringe at least claims 5 and 12 of the '641 patent, including but not limited to the Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch SE, Apple Watch Series 6, Apple Watch Series 7, Apple Watch Ultra, Apple Watch SE (2nd Generation), Apple Watch Series 8, and Apple Watch Hermes (the "Accused Smart Watch Products").

29. Apple states that the allegations set forth in Paragraph 29 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies that any of the Apple Watch products listed in Paragraph 29 infringes any valid claim of the '641 Patent and denies the allegations set forth in Paragraph 29 on that basis.

30. The Apple Watch Series 7 exemplifies the relevant functionality of each Accused Smart Watch Product.



*Apple Watch Series 7*, APPLE, https://web.archive.org/web/20220710092539/https://www.apple.com/applewatch-series-7/ (last visited Apr. 10, 2023).

30. Apple states that the allegations set forth in Paragraph 30 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 30.

31. The Apple Watch Series 7 contains a secondary Li-ion battery as




disclosed in claim 5 of the Asserted Patent.

*Batteries*, APPLE, *https://www.apple.com/batteries/* (last visited Apr. 10, 2023).

31. Apple states that the allegations set forth in Paragraph 31 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 31.

32. Further, the Apple Watch Series 7 utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the Apple



Watch Series 7 has an upper charge limit of 4.45 V.

Juli Clover, *Apple Watch Series 7 Teardown Reveals Battery Capacity, Display Updates and More*, MacRumors (Oct. 21, 2021 1:42 PM PDT), https://www.macrumors.com/2021/10/21/apple-watch-series-7-teardown-ifixit/#:~:text=The%2041mm%20%E2%80%8CApple%20Watch%20Series%207%E2%80%8C%20features%20a,new%2C%20brighter%20displays%20rather%20than%20adding%20battery%20life (last visited Apr. 10, 2023).

32. Apple states that the allegations set forth in Paragraph 32 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 32.

33. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple Watch Series 7 is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

33. Apple states that the allegations set forth in Paragraph 33 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 33.

34. The Apple Watch Series 7 maintains at least 75.83% of its capacity after 400 charging cycles, as disclosed in claim 12 of the Asserted Patent. As shown in the advertisement from Apple's website below, the Apple Watch Series 7 maintains 80% of its battery's capacity after 1000 complete charge cycles.

# Apple Watch Owners

Your battery is designed to retain up to 80% of its original capacity at 1000 complete charge cycles. The one-year warranty (for Apple Watch and Apple Watch Sport) and two-year warranty (for Apple Watch Edition) include service coverage for a defective battery. If it is out of warranty, Apple offers a battery service. Prices and terms may vary.

*Batteries*, APPLE, *https://www.apple.com/batteries/service-andrecycling/#:~:text=iPhone%20Owners,Prices%20and%20terms%20may%20vary* (last visited Apr. 10, 2023).

34. Apple states that the allegations set forth in Paragraph 34 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 34.

**(4) The Accused Headphone Products**

35. Apple makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various headphones that infringe at least claim 5 of the ’641 patent, including but not limited to the Airpods, Airpods 2, Airpods 3, Airpods Pro, Airpods Pro 2, and Airpods Max (the “Accused Headphone Products”).

35. Apple states that the allegations set forth in Paragraph 35 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies that any of the Airpods products listed in Paragraph 35 infringe any valid claim of the ’641 Patent and denies the allegations set forth in Paragraph 35 on this basis.

36. The Apple Airpods Pro exemplifies the relevant functionality of each Accused Headphone Product.



*AirPods Pro*, APPLE, https://web.archive.org/web/20220703124624/https://www.apple.com/airpodspro/ (last visited Apr. 10, 2023).

36. Apple states that the allegations set forth in Paragraph 36 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 36.




37. The Apple Airpods Pro contains a secondary Li-ion battery as disclosed in claim 5 of the Asserted Patent.

*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Apr. 10, 2023).

37. Apple states that the allegations set forth in Paragraph 37 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 37.

38. Further, the Apple Airpods Pro utilizes a Li-ion battery that has a charge cut-off voltage of greater than 4.2 V but less than 5.8 V as disclosed in claim 5 of the Asserted Patent. As can be seen on its label, the Li-ion battery used in the Apple Airpods Pro has an upper charge limit (充电限制电压) of 4.35 V.



*AirPods Pro Teardown*, iFixit (Oct. 31, 2019), https://www.ifixit.com/Teardown/AirPods+Pro+Teardown/127551 (last visited Apr. 10, 2023).

38. Apple states that the allegations set forth in Paragraph 38 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 38.

39. The ratio of positive electrode material to negative electrode material of the secondary Li-ion battery used in the Apple Airpods Pro is between 1:1.0 and 1:2.5, as calculated by a theoretic capacity with a charge cut-off voltage set at 4.2 V.

39. Apple states that the allegations set forth in Paragraph 39 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 39.

**COUNT ONE: INFRINGEMENT OF U.S. PATENT 7,749,641**

40. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

40. Apple incorporates by reference all of its responses to the allegations contained in the preceding paragraphs as if fully set forth herein.

41. The ’641 patent is valid and enforceable. Apple does not have a license to practice any of the limitations claimed in the ’641 patent.

41. Apple denies the allegations set forth in Paragraph 41 of the Complaint, except admits that as of the date of this Answer, Apple does not have a license to the ’641 Patent.

42. By making, using, offering for sale, and/or selling products in the United States, and/or importing them into the United States, including but not limited to the Accused Products, Apple has injured Plaintiff and is liable to Plaintiff for directly infringing one or more claims of the Asserted Patent pursuant to 35 U.S.C. § 271(a).

42. Apple states that the allegations set forth in Paragraph 42 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 42.

43. Apple knowingly encourages and intends to induce infringement of the Asserted Patent by (i) making, using, offering for sale, and/or selling products in the United States, and/or importing them into the United States, including but not limited to the Accused Products and (ii) encouraging and instructing its customers on how to use the inventions claimed in the Asserted Patent, the claims of which are directly infringed by Apple's customers. Apple therefore also infringes the Asserted Patent under 35 U.S.C. § 271(b).

43. Apple states that the allegations set forth in Paragraph 43 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 43.

44. For example, through various marketing and advertising materials, Apple encourages and instructs its customers on how to use the inventions claimed in the Asserted Patent, which Apple advertises as a core feature of the Accused Products, as shown by way of a non-limiting example below:

## Charge the iPhone battery

iPhone has an internal, lithium-ion rechargeable battery, which currently provides the best performance for your device. Compared with traditional battery technology, lithium-ion batteries are lighter, charge faster, last longer, and have a higher power density for more battery life. To understand how your battery works so you can get the most out of it, see the Apple Lithium-ion Batteries website.

*iPhone User Guide*, APPLE, https://support.apple.com/guide/iphone/charge-the-

## Why Lithium-ion?

Rechargeable lithium-ion technology currently provides the best performance for your device. Compared with older battery types, lithium-ion batteries weigh less, last longer, and charge more efficiently.

Learn more about how your battery charges ›

battery-iph63eecc618/ios (last visited Apr. 10, 2023).

*Batteries*, APPLE, https://www.apple.com/batteries/ (last visited Apr. 10, 2023).

44. Apple states that the allegations set forth in Paragraph 44 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 44.

45. Apple performs these actions with knowledge of the Asserted Patent. Apple became aware of the Asserted Patent through its litigations against Plaintiff's founders in China. On March 21, 2018, Plaintiff's founders, the named inventors on the Asserted Patent, initiated a patent infringement lawsuit against Apple at the Beijing Intellectual Property Court to recover damages and to obtain an injunction against Apple for its infringement of the Chinese Patent. The complaint in that action, which was provided to Apple, specifically refers to the Asserted Patent here, in explaining that the same invention covered by the Chinese Patent had also been claimed in a patent issued in the United States. The litigation over the Chinese Patent was hotly contested by Apple and consisted of extensive proceedings litigated over a period of five years so far, including appeals all the way up to China's highest court, the People's Republic of China Supreme People's Court. That court described its decision in that case as one of its top ten intellectual property decisions of 2020.

45. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple denies the allegations set forth in Paragraph 45 of the Complaint, except admits that Messrs. Xiaoping Ren and Jie Sun filed a patent infringement lawsuit against Apple Shanghai and Apple Beijing at the Beijing Intellectual Property Court that is dated April 11, 2018, seeking damages and an injunction for Apple's alleged infringement of the Chinese Patent; the complaint did not identify the U.S. Patent Application Number, U.S. Patent Publication Number, or U.S. Patent Number of the '641 Patent; appeals in that case

reached the People's Republic of China Supreme People's Court; and litigation over Apple's alleged infringement of the Chinese Patent is pending.

46. On June 6, 2018, shortly after it was sued in China, Apple filed a request with the China National Intellectual Property Administration (CNIPA),[1] seeking a declaration of invalidity of the Chinese Patent.

46. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple admits that Apple Shanghai and Apple Beijing filed a request with the China National Intellectual Property Administration (CNIPA) on June 6, 2018 challenging the validity of the Chinese Patent.

47. Apple's request was unsuccessful. On April 15, 2019, the CNIPA issued its decision, holding that thirteen of the fourteen claims in the Chinese Patent were valid, and only a single claim—which is unlike any claim in the '641 patent—was invalid.

47. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple admits that Apple Shanghai and Apple Beijing received the CNIPA's decision on April 26, 2019 that the CNIPA invalidated Claim 13 of the Chinese Patent and did not invalidate Claim 1–12 and 14 of the Chinese Patent. Apple denies the balance of the allegations set forth in Paragraph 47 of the Complaint.

48. Apple appealed the decision to the Beijing IP Court, and the appeal went all the way up to the People's Republic of China Supreme People's Court, which left

---

[1] The CNIPA is the equivalent of the United States Patent and Trademark Office.

the CNIPA's validity findings in place. Apple filed a petition for reconsideration of the judgment (a procedure similar to a motion for reconsideration or for a rehearing *en banc*), which was summarily rejected by the Supreme People's Court. During this period, the suit before the Beijing IP Court was dismissed without prejudice, per rules issued by the PRC Supreme People's Court.

48. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple admits that Apple Shanghai and Apple Beijing appealed the CNIPA's decision to the Beijing IP Court, which issued a decision on May 29, 2020 vacating and remanding the CNIPA's decision; Messrs. Xiaoping Ren and Jie Sun subsequently appealed the Beijing IP Court's decision to the Supreme People's Court (SPC), which issued a decision on November 16, 2020 upholding the CNIPA's decision and noting the scope of Claim 1 was smaller than the claimed scope; Apple Shanghai and Apple Beijing filed a Petition for Retrial on June 18, 2021 and June 23, 2021, respectively, which were both dismissed by the SPC; and during this time, the patent infringement lawsuit filed by Messrs. Xiaoping Ren and Jie Sun was dismissed without prejudice. Apple denies the balance of the allegations set forth in Paragraph 48 of the Complaint.

49. On June 1, 2021, the named inventors renewed their patent infringement suit against Apple at the Beijing High People's Court. In the complaint, the named inventors again made reference to the '641 patent, by noting that the inventions covered by the Chinese Patent had also been patented in the United States. A copy of the complaint is attached hereto as **Exhibit B**. The action against Apple before the Beijing High People's Court is currently pending.

49. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not

require a response. To the extent a response is required, Apple admits that Messrs. Xiaoping Ren and Jie Sun filed a patent infringement suit against Apple Shanghai and Apple Beijing in the Beijing High People's Court on June 1, 2021, which is currently pending before the Beijing High People's Court. Apple further admits that Exhibit B purports to be a translation of Complaint for Civil Action and states "[i]n addition, patents within the patent family of the Patent Involved have been granted with patent rights in the USA, Japan, and South Korea, and such patent rights have remained valid by far" (Exhibit B at 2), but did not otherwise identify the U.S. Patent Application Number, U.S. Patent Publication Number, or U.S. Patent Number. Apple denies the balance of the allegations set forth in Paragraph 49.

50. Even putting aside the references in the Chinese litigations to the Asserted Patent, Apple's knowledge of the Chinese Patent, the intensity of the Chinese litigations, the size of the product base impacted by the Asserted Patent, and the similarities between the Chinese Patent and the Asserted Patent would have inevitably caused (and on information and belief did cause) Apple and its lawyers to obtain knowledge of the '641 patent and of Apple's infringement of the patent. The Asserted Patent claims priority to the Chinese Application, and its specification is translated directly from the Chinese Patent's specification. Claims 5–10 of the Asserted Patent are also literal translations of claims 5–10 of the Chinese Patent. Those claims are asserted in the Chinese litigations, and were unsuccessfully challenged by Apple in the proceedings. The Asserted Patent is the only patent in the family to issue in the United States, and indeed the only issued patent outside of East Asia. The family is exceptionally small, with just two other issued patents, one in South Korea (KR1008370B1), and one in Japan (JP5005877B2).

50. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple denies the allegations

set forth in Paragraph 50 of the Complaint, except admits that the face of the ’641 Patent claims priority to the Chinese Patent.

51. The products accused in the China litigation are substantially the same broad set of key Apple product lines that are accused in this case. Those products are critical to Apple’s success both in the Chinese market and the United States market—one from which Apple derives nearly half of its $394 billion dollars in revenue, and one which has only one issued patent in the relevant patent family, the ’641 patent.

51. Apple asserts any claim for willful infringement was disposed of in the Court’s Order granting-in-part Apple’s motion to dismiss (Dkt. 47), and Plaintiff’s Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states the allegations set forth in Paragraph 51 of the Complaint are subjective characterizations and conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations of Paragraph 51.

52. Apple’s legal budget matches its size. Apple has an estimated $1 billion annual legal budget and hires only exceptional law firms both in the United States and China to litigate patent disputes.

52. Apple asserts any claim for willful infringement was disposed of in the Court’s Order granting-in-part Apple’s motion to dismiss (Dkt. 47), and Plaintiff’s Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states the allegations set forth in Paragraph 52 of the Complaint are subjective characterizations and conclusions of law to which no response is required. To the extent a response is required, Apple lacks sufficient information to respond to Paragraph 52, and on that basis, denies the allegations set forth in Paragraph 52.

53. Notably, despite having litigated a motion to dismiss regarding the sufficiency of RJ Technology’s pleading of Apple’s pre-suit knowledge of the Asserted Patent, Apple has never asserted that it did not in fact have knowledge of the

’641 patent prior to this suit’s filing—whether through the litigation in China or otherwise. Instead, Apple has studiously avoided making such a factual representation, despite RJ Technology having asked Apple to so assert in connection with the briefing on the motion to dismiss, and in its opening set of interrogatories.

53. Apple asserts any claim for willful infringement was disposed of in the Court’s Order granting-in-part Apple’s motion to dismiss (Dkt. 47), and Plaintiff’s Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states the allegations set forth in Paragraph 53 of the Complaint are subjective characterizations and conclusions of law to which no response is required. To the extent a response is required, Apple admits it first reviewed the ’641 Patent following service of the Complaint in this litigation and denies the balance of Paragraph 53.

54. On February 24, 2022, in an interrogatory, RJ Technology asked Apple to “[d]escribe in detail all facts and circumstances under which Apple first became aware of the Patent-in-Suit.” RJ Technology specifically asked “the date(s) when this occurred, the source of information, the identity of the person(s) who received the information on Apple’s behalf, when and how Apple first obtained a copy of the patent-in-suit, and any actions taken by Apple or any of its directors, officers, or employees as a result.”

54. Apple asserts any claim for willful infringement was disposed of in the Court’s Order granting-in-part Apple’s motion to dismiss (Dkt. 47), and Plaintiff’s Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple admits that Plaintiff’s Interrogatory No. 8, served on February 24, 2023, requested Apple “[d]escribe in detail all facts and circumstances under which Apple first became aware of the Patent-in-Suit, including, but not limited to, the date(s) when this occurred, the source of information, the identity of the person(s) who received the information on Apple’s

behalf, when and how Apple first obtained a copy of the patent-in-suit, and any actions taken by Apple or any of its directors, officers, or employees as a result."

55. On March 23, 2022, Apple requested an additional two weeks to respond to the interrogatory. Despite this additional time, and with more than six weeks in total to prepare an appropriate response, on April 10, 2022, Apple again refused to answer directly as to when it first became aware of the Asserted Patent. Instead, Apple answered evasively, stating only that it "first reviewed" the Asserted Patent "following service of Plaintiff's Complaint on October 19, 2022." (Emphasis added.)[2] Apple's response is conspicuously silent as to when Apple and its agents first acquired knowledge of the U.S. patent, even though that is the question asked in the interrogatory. Apple's ongoing evasiveness on this subject, and its failure to address the fact that the complaints in the Chinese litigations expressly refer to the Asserted Patent here, further supports the inference that Apple had pre-suit knowledge of the '641 patent and Apple's infringement of it, or at a minimum was willfully blind to both.

55. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple admits that both Plaintiff and Defendant agreed to extend the due date for both Plaintiff's and Defendant's first sets of discovery to April 10, 2023, and Apple's response to Plaintiff's Interrogatory No. 8 stated in part that "Apple first reviewed U.S. Patent No. 7,749,641 following service of Plaintiff's Complaint on October 19, 2022. Upon being served with Plaintiff's Complaint, Apple initiated steps to investigate Plaintiff's allegations and defend itself in this lawsuit." To the extent required, Apple denies the balance of the allegations in Paragraph 55.

---

[2] A copy of Apple's responses to Plaintiff's opening set of interrogatories is attached hereto as **Exhibit C**.

56. In view of the above facts, Apple had knowledge not only of the Chinese Patent, but also had specific knowledge of the Asserted Patent itself, prior to the filing of this litigation.

56. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states the allegations set forth in Paragraph 56 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple admits it had knowledge of the Chinese Patent prior to the filing of this litigation and denies the balance of the allegations of Paragraph 56.

57. Apple also had knowledge that its ongoing acts of importation and sale (among other acts) of the Accused Products in the United States infringed the '641 patent. As noted, claims 5–10 of the Asserted Patent are literal translations of claims 5–10 of the Chinese Patent. The same claim limitations are therefore at issue in the Chinese litigations. And an overlapping set of accused products is also at issue both in China and in this case. However, despite five years of litigation concerning substantially the same claim elements and products, Apple has still not put forward any direct evidence, such as testing results, showing that its products do not infringe the Chinese Patent.

57. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple denies the allegations set forth in Paragraph 57 of the Complaint, except admits that Claims 5–10 of the Chinese Patent are asserted in the Chinese litigation, at least some, but not all, of the types of accused products overlap between the Chinese litigation and this litigation, overlap. Apple denies the balance of the allegations set forth in Paragraph 57.

58. In addition, on information and belief, Apple designs its products with the specific intent that they practice both the charge cutoff voltages and the electrode material ratios that are claimed in the Asserted Patent. That Apple's products practice each of the limitations of the claims of the Asserted Patent is apparent, clear, and obvious to Apple. On information and belief, Apple calculates both the charge cutoff voltage and the electrode material ratio in the ordinary course of designing its products, and specifies its product designs so that the products fall within the claimed ranges. Apple does all of this with full knowledge that doing so will infringe, and with the specific intent to enable their products to have the capacity, specific energy, and recycle properties that are described in the Asserted Patent. Among other things, Apple openly touts (for example) that its products maintain 80% of its original capacity at 500 complete charge cycles, while at the same time knowing that the '641 patent claims similar recycle properties and knowing that this functionality is enabled by the teachings of the '641 patent as claimed.

58. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states that the allegations set forth in Paragraph 58 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 58.

59. Despite Apple's knowledge of the Asserted Patent, knowledge that acts in the United States with regard to the accused products are infringing, its deliberate use of the claimed designs to yield the benefits described in the patent, its enthusiastic trumpeting of those benefits, and its knowledge that the Chinese Supreme Court affirmed the validity of the Chinese Patent over the strongest prior art that Apple could identify, Apple has never attempted to design around the claims of the Asserted Patent, has never slowed or ceased its infringing acts, and has never communicated

with RJ Technology or the inventors about a license. Nor did Apple file an IPR or declaratory judgment action in the United States. As such, Apple's infringement of the Asserted Patent has been and continues to be deliberate and willful and constitutes egregious acts supporting a finding of increased damages under 35 U.S.C. § 284.

59. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states that the allegations set forth in Paragraph 59 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 59.

60. RJ Technology LLC also made Apple aware of the Asserted Patent on October 19, 2022, when it served the complaint in this action on Apple along with Exhibit A, a certified copy of the Asserted Patent. ECF Nos. 1, 1-1, 18.

60. Apple admits that it was made aware of the Asserted Patent on October 19, 2022, when the Complaint was served.

61. Apple's infringement is exceptional and warrants an award of enhanced damages and attorneys' fees pursuant to 35 U.S.C. §§ 284-285.

61. Apple asserts any claim for willful infringement was disposed of in the Court's Order granting-in-part Apple's motion to dismiss (Dkt. 47), and Plaintiff's Second Amended Complaint does not cure the defects, hence this allegation does not require a response. To the extent a response is required, Apple states that the allegations set forth in Paragraph 61 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 61.

62. Plaintiff has been harmed by Apple's wrongful conduct and is entitled to compensatory damages, in no event less than a reasonable royalty with interest and costs.

62. Apple states that the allegations set forth in Paragraph 62 of the Complaint are conclusions of law to which no response is required. To the extent a response is required, Apple denies the allegations set forth in Paragraph 62.

## AFFIRMATIVE DEFENSES

Apple sets forth below its affirmative defenses. Each affirmative defense is asserted as to all claims against Apple. By setting forth these affirmative defenses, Apple does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing stated herein is intended to be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiff's allegations. Nor shall anything stated or unstated constitute an admission of any kind. Apple reserves the right to restate, re-evaluate, or recall any defense and to assert additional defenses based on information learned or obtained during discovery.

### FIRST AFFIRMATIVE DEFENSE

### (Noninfringement of U.S. Patent No. 7,749,641)

63. Apple does not infringe and has not infringed any valid and enforceable claim of the '641 Patent directly or indirectly, by inducement or contributory infringement, literally, or by equivalents.

### SECOND AFFIRMATIVE DEFENSE

### (Invalidity of U.S. Patent No. 7,749,641)

64. One or more claims of the '641 Patent are invalid for failure to satisfy the conditions for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112. Apple incorporates by reference the allegations in the foregoing paragraphs as set forth herein.

**THIRD AFFIRMATIVE DEFENSE**

**(Estoppel)**

65. Plaintiff's requested relief is barred, in whole or in part, by the doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel and disclaimer arising from the patentees' actions, representations, or conduct before the United States Patent and Trademark Office during prosecution of the Asserted Patents.

**FOURTH AFFIRMATIVE DEFENSE**

**(Prosecution Laches)**

66. Plaintiff's claims are barred, in whole or in part, by the doctrine of prosecution laches by reason of its unreasonable and unexplained delay in the prosecution of the Asserted Patent.

**FIFTH AFFIRMATIVE DEFENSE**

**(Prior Commercial Use)**

67. Plaintiff's claims are barred, in whole or in part, by 35 U.S.C. § 273.

**SIXTH AFFIRMATIVE DEFENSE**

**(Waiver, Unclean Hands, Acquiescence and/or Equitable Estoppel)**

68. Plaintiff's claims are barred, in whole or in part, under the doctrines of waiver, unclean hands, acquiescence, estoppel, and/or other applicable equitable doctrines.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

69. To the extent Plaintiff seeks recovery for any alleged infringement committed more than six years prior to the filing of the Complaint, such recovery is barred by 35 U.S.C. § 286.

## RESERVATION OF AFFIRMATIVE DEFENSE

70. Apple reserves the right to supplement additional affirmative defenses as discovery proceeds in this case.

## DEMAND FOR TRIAL BY JURY

1. Pursuant to Federal Rule of Civil Procedure 38(b), Apple hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Apple prays for judgment as follows on Plaintiff's Complaint and on Apple's Answer:

1. A finding that Apple has not and does not infringe, whether directly or indirectly, by inducement or contributory infringement, literally, or by equivalents, any valid and enforceable claim of the '641 Patent;

2. A finding that each and every one of the claims of the '641 Patent is invalid and/or enforceable;

3. Dismissal of Plaintiff's Second Amended Complaint in its entirety, with prejudice;

4. A declaration that Plaintiff take nothing by way of its Second Amended Complaint;

5. An Order pursuant to 35 U.S.C. § 284 and/or Rule 54(d) of the Federal Rules of Civil Procedure awarding Apple its costs incurred in connection with this action;

6. An Order finding this an exceptional case under 35 U.S.C. § 285 and awarding Apple its costs and fees in this action, including attorney's fees and prejudgment interest thereon; and,

7. An Order awarding Apple such further relief as the Court deems just and proper.

DATED: May 4, 2023

KIRKLAND & ELLIS LLP

*__/s/ Ellisen Shelton Turner__*
Ellisen Shelton Turner, P.C. (SBN 224842)
*ellisen.turner@kirkland.com*
Yungmoon Chang (SBN 311673)
*yungmoon.chang@kirkland.com*
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Brandon H. Brown (SBN 266347)
*bhbrown@kirkland.com*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Vanessa Sim (SBN 341107)
*vanessa.sim@kirkland.com*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant Apple Inc.*

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant Apple Inc. hereby demands a jury trial on all issues triable as of right by a jury.

DATED: May 4, 2023

KIRKLAND & ELLIS LLP

*/s/ Ellisen Shelton Turner*

Ellisen Shelton Turner, P.C. (SBN 224842)
*ellisen.turner@kirkland.com*
Yungmoon Chang (SBN 311673)
*yungmoon.chang@kirkland.com*
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Brandon H. Brown (SBN 266347)
*bhbrown@kirkland.com*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Vanessa Sim (SBN 341107)
*vanessa.sim@kirkland.com*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant Apple Inc.*